IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANDREW JAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 18-cv-10267 |
| **SIEMENS AG, SIEMENS** ) | |
| **FINANCIAL SERVICES, INC.,** ) | |
| **SIEMENS HEALTHINEERS, AND** ) | |
| **SIEMENS NEXT 47 GMBH** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Siemens AG, Siemens Financial Services, Inc. ("SFS" or "Siemens Financial"), Siemens Medical Solutions USA, Inc. (incorrectly named as "Siemens Healthineers," and hereinafter "Siemens Medical"), and Next 47 GmbH (incorrectly named as "Siemens Next 47 GmbH") (collectively, "Defendants"), respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the Complaint of Plaintiff Andrew Jay ("Plaintiff").

**I.       PRELIMINARY STATEMENT**

Plaintiff was an at-will employee of Siemens Financial who alleges that he was "demoted" and "constructively discharged" following the report of an alleged statement made by a third-party consultant, to another third-party, regarding the consultant's ability to influence Siemens Financial's venture capital investment decisions. Simply put, these bald allegations do not suffice to plead a plausible wrongful discharge claim under Massachusetts law. Indeed, it is well-established Massachusetts law that employers may discharge at-will employees for any

reason or no reason at all, and only in the rarest of circumstances—where the discharge clearly violates a "well established public policy"—may employees bring a wrongful discharge claim. Plaintiff's allegations fall well short of implicating any public policy, let alone one that is well-established.  Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.  PLAINTIFF'S ALLEGATIONS

For purposes of this Motion only, Defendants restate the pertinent facts alleged in the Complaint.  Defendants do not admit in any way the accuracy of such allegations.

According to the Complaint,[1] Plaintiff was most recently employed by SFS and Siemens Medical, where he was part of a team responsible for evaluating and managing healthcare venture capital investments.  Compl. ¶¶ 10-13.  In the summer of 2016, Plaintiff and his team evaluated, but eventually passed on, making an investment in Base4, a biotechnology company located in the United Kingdom.  *Id.* at ¶ 14.  Several months later, Plaintiff allegedly received a call from Thomas Miller ("Miller"), a former Siemens employee now affiliated with GreyBird Investments ("GreyBird"), regarding GreyBird's pitch for SFS to invest in Base4 with a syndicate of investors.  *Id.* at ¶¶ 15-16.  Plaintiff alleges that Miller had a consulting contract with Siemens at the time of GreyBird's pitch to Siemens.  *Id.* at ¶ 18.

In "June or July" of 2017, Plaintiff then received a call from Base4's CEO, Cameron Frayling, informing him that Miller purportedly "had represented to Base4 that Siemens Healthcare would invest if Miller told them to, that Siemens Healthcare would not invest if Miller told them not to, and that he should sign [a] proposed term sheet with GreyBird if he

---

[1] Defendants assume for purposes of this Motion only that the well-pleaded facts contained in Plaintiff's Complaint are true.

wanted to see any funding from Siemens Healthcare." *Id.* at ¶ 22. Plaintiff alleges that he reported this statement to the corporate compliance department located in the United States. *Id.* at ¶¶ 23-24.

Shortly after making the report, the compliance department informed Plaintiff that there was no compliance concern with the alleged statements Base4 and Frayling had attributed to Miller because Miller was neither an employee nor contactor of Siemens. *Id.* at ¶ 25. Plaintiff later learned that Miller's alleged contract with Siemens Medical would not be renewed. *Id.* at ¶ 27.

Thereafter, in the fall of 2017, Plaintiff was offered the position of "Director of Healthineers Venture Capital," which he describes in the Complaint as a "demotion." *Id.* at ¶¶ 30-33. On October 13, 2017, Plaintiff allegedly informed human resources that he was being demoted in retaliation for making his earlier report to the compliance department concerning Miller. *Id.* at ¶ 41. Human Resources, however, informed Plaintiff that it had investigated the matter and found no causal relationship between the compliance report and the job offer provided to Plaintiff. Unhappy with Siemen's response, Plaintiff rejected the offer of employment and filed this Complaint alleging a single count of wrongful discharge.

### III.   ARGUMENT

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether

a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In evaluating a motion to dismiss, courts are not required to accept as true allegations in a complaint that are legal conclusions. *Id.* at 678. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Therefore, in assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012).

### A. Plaintiff's Wrongful Discharge Claim Is Implausible

Plaintiff's wrongful discharge claim fails because the Complaint fails to plead facts demonstrating that any alleged "termination" was in retaliation for a report implicating well-established public policy.

As a general matter, under Massachusetts law, at-will employment is terminable by an employer "for any reason or for no reason at all." *Francois v. JRM Hauling & Recycling Servs., Inc.*, No. 08-02125, 2009 BL 176453, at *2 (Mass. Super. Ct. July 30, 2009). Although Massachusetts law recognizes an exception to the at-will employment doctrine where a discharge "violates a clearly established public policy," the "court consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would 'convert the general rule . . . into a rule that requires just cause to terminate an at-will employee.'" *King v. Driscoll*, 418 Mass. 576, 582 (1994); *see also Hinchey v. NYNEX Corp.*, 144 F.3d 134, 145 (1st Cir. 1998) (noting that public policy claims are limited to situations in which an employer violated a well-established public policy). An employee "who simply disagrees with [his] employer's policy decisions, may not seek redress in the courts" through a public policy claim. *Smith-Pfeffer v.*

*Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 151 (1989). Rather, an actionable claim is only available to those employees "who are terminated for asserting a legally guaranteed right . . . for doing what the law requires . . . or for refusing to do that which the law forbids." *Id.* at 149-150 (1989).

To survive a motion to dismiss, a plaintiff asserting a claim for wrongful termination in violation of public policy must identify a Massachusetts statute or regulation that clearly expresses a legislative policy that protects or encourages the plaintiff's activity. *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 473 (1992); *see also Mercado v. Manny's T.V. and Appliance, Inc.*, 77 Mass. App. Ct. 135, 139 (2010). Alternatively, the exception to at-will employment can be triggered in the rare circumstance where an employee is terminated for performing "important public deeds, even though the law does not absolutely require the performance of such a deed." *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 810-811, 575 N.E.2d 1107 (1991) (e.g., cooperating with Unites States Customs authorities).

Importantly, however, complaints that implicate behavior which is merely socially desirable do "not warrant recovery by an at-will employee." *Mercado*, *supra* at 141; *Mistishen v. Falcone Piano Co.*, Inc., 36 Mass. App. Ct. 243 (1994) (internal complaints of poorly made pianos might be appropriate and socially desirable, but because the threat posed to the public was not grave, it fell short of the importance necessary to warrant a conclusion that termination violated public policy); *Gichuhi v. Alternative Supports, Inc.*, 90 Mass. App. Ct. 1104 (2016) (unpublished) (despite internal complaints alleging serious misconduct posing a threat to the welfare of four disabled residents, public safety or health was not implicated by the allegations and the internal whistleblowing, though socially desirable, lacked the necessary level of public importance that would bring the case within the "important public deed" category for which

redress is permitted). Accordingly, in the corporate setting, courts have consistently dismissed complaints pertaining to "internal policy matters" because they generally do not implicate *public* policy. *E.g.*, *Sassine v. Fidelity Mgmt. & Research Co.*, No. SUCV2012-04085-E, 2013 WL 7121296, at *3 (Mass. Super. Ct. Oct. 22, 2013) (granting motion to dismiss because termination for refusing to edit a fund manager's book, which plaintiff viewed as a breach of fiduciary duty to employer and its investors, did not implicate any important public policy even if it violated internal corporate policies); *Bergstrom v. Protocol Global Solutions*, 30 Mass. L. Rptr. 247 (Super. Ct. 2012) (complaint of threats and harassment in violation of internal company policy were insufficient to establish claim of wrongful termination in violation of public policy).

Plaintiff has failed to allege that the public policy exception applies here. To do so, Plaintiff would need to cite some statute or important and well-defined public policy protecting employees who make complaints regarding alleged misrepresentations made by external consultants to third parties.[2] In other words, Plaintiff would need to show that the Massachusetts Legislature intended for this type of conduct to be prohibited. He has not done so. Nor could he. Plaintiff's allegations, at best, raise concerns regarding whether representations (if made) may have been unethical or a violation of internal Siemens policy. That is insufficient to trigger the public policy exception. *See, e.g.*, *Dorman v. Norton Co.*, 64 Mass. App. Ct. 1, 11 (Mass. App. Ct. 2005) (it is a "well-recognized principle that internal

---

[2] Plaintiff has not adequately pled that Miller was even a consultant of Siemens at the time of the alleged wrongful conduct. Indeed, Plaintiff admits that Siemens Compliance investigated his claim and found that "Miller did not have a contractual relationship with Healthineers." Compl. ¶ 25. When asked by Siemens Compliance for proof of the contract Miller allegedly had with Siemens, Plaintiff admittedly never provided Compliance with anything or spoke with them further about the matter. Compl. ¶25-26. Accordingly, this Court would have to find that there is an important public policy to prevent third-parties from making misrepresentations purportedly on behalf of companies to third-parties. Nevertheless, for purposes of this motion, Defendants assume that Miller was an external consultant.

corporate matters do not provide a basis for the public policy exception."); *Wright v. Shriners Hosp.*, 412 Mass. 469, 472-73 (1992) (noting that "[i]nternal matters . . . could not be the basis of a public policy exception to the at-will rule").

The Massachusetts Superior Court's decision in *Urbon v. Brandeis Univ.*, No. 961679, 1996 WL 1249886 (Mass. Super. Ct. Nov. 25, 1996) is particularly instructive.  There, the plaintiff alleged he was a "whistleblower," reporting a "kick-back" scheme by another employee in connection with a service contract.  *Id.* at *1.  After the employer authorized the service contract following an investigation of the alleged wrongful conduct, the plaintiff approached his supervisor and told him that he considered the behavior to be inappropriate.  *Id.*  In response, the supervisor "advised [the plaintiff] that he should not be a 'whistleblower' and that if he did not keep quiet, he would be looking for other employment.'"  *Id.* at *4.  One month later, the plaintiff and another employee participating in the investigation were terminated.  *Id.* at *1. Notwithstanding these allegations, the court dismissed the plaintiff's wrongful termination claim as not falling within the public policy exception.  *Id.* at *4-5.  Defendants' conduct, the court explained, did "not rise to the level of a violation of public policy based upon the alleged 'kick-back' scheme and the fact that the investigation of the scheme was an internal matter for defendants to manage."  *Id.* at *5.

Plaintiff's allegations here are even further removed from implicating public policy concerns than those at issue in *Urbon*.  At best, Plaintiff is complaining of a misleading representation allegedly made by a third-party contractor to another third party concerning a proposed investment.  *See* Compl. ¶ 22 (alleging that Miller told Base4 "that Siemens Healthcare would invest if Miller told them to, that Siemens Healthcare would not invest if Miller told them to, and that he should sign the proposed term sheet with GreyBird if he wanted to see any

funding from Siemens Health."). While Plaintiff attempts to hyperbolize this statement as "extortion," there are no facts suggesting that Base4 was maliciously threatened by Miller with personal injury should it refuse to sign a term sheet proposed by Miller. *See Commonwealth v. Coolidge*, 128 Mass. 55, 59 (1971) (noting that the elements of criminal extortion require proof of (1) a malicious threat (2) made to a named person (3) of personal injury to someone (4) with intent to extort money.).

Even if true, Plaintiff's alleged "whistleblowing" activity does not implicate any unlawful or illegal behavior, let alone behavior contrary to well-established public policy. That being the case, Plaintiff's claim for wrongful discharge should be dismissed with prejudice.

### B. Plaintiff's Claims Against Next47 GmbH and Siemens AG Should Be Dismissed With Prejudice

To the extent Plaintiff's claims are permitted to proceed at all (which they should not be for the reasons set forth above), any claim against Next47 GmbH and Siemens AG should be dismissed with prejudice. The Complaint fails to allege the existence of any employment relationship between Plaintiff and these entities. For this reason alone, those entities have been improperly named and joined to this lawsuit, and Plaintiff's claims against both entities should be dismissed with prejudice. Moreover, neither entity has been properly served.

### IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiffs' Complaint in its entirety with prejudice.

Respectfully submitted,

/s/ *Bronwyn L. Roberts*
Bronwyn L. Roberts (BBO# 638079)
**Duane Morris LLP**
100 High Street
Boston, MA 02110
Tel: (857) 488-4200
Fax: (857) 488-4201
blroberts@duanemorris.com

Sara A. Begley (*pro hac vice forthcoming*)
Nipun J. Patel (*pro hac vice forthcoming*)
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
Tel: (215) 851-8100
Fax: (215) 851-1420
sbegley@reedsmith.com
npatel@reedsmith.com

*Attorneys for Defendants*

Dated:  February 16, 2018

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law was filed through the Court's ECF system on February 16, 2018, causing service of same to be made on all registered participants in the Court's ECF system.

Kristen Schuler Scammon, Esq.<br>
Torres, Scammon, Hincks & Day, LLP<br>
35 India Street<br>
Boston, MA 02110

*/s/ Bronwyn L. Roberts*
Bronwyn L. Roberts