UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10267-RWZ

ANDREW JAY

v.

SIEMENS AG, SIEMENS FINANCIAL SERVICES, INC.,
SIEMENS HEALTHINEERS and SIEMENS NEXT 47 GMBH

MEMORANDUM OF DECISION AND ORDER

August 30, 2018

ZOBEL, S.D.J.

Plaintiff Andrew Jay, formerly an at-will employee of defendants, alleges wrongful constructive discharge in retaliation for his internal report of extortion. Defendants move to dismiss his single-count complaint.

I. **Factual Background**

The following well-pleaded facts are recited as alleged in the complaint. I accept them as true for the purposes of resolving this motion. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011).

Plaintiff, a Massachusetts resident, worked for 14 years in various capacities for defendant Siemens Financial Services, Inc. ("SFS"), a German healthcare company doing business in Massachusetts, and related entities. In his most recent role, plaintiff worked as Managing Partner/Vice President of Siemens Medical Solutions USA, Inc.

(referred to in the complaint and hereafter as "Healthineers"). His responsibilities included managing healthcare venture investment efforts and supervising the Boston office of SFS.[1] He received positive performance reviews throughout his tenure with SFS/Healthineers and oversaw positive financial returns.

In the spring of 2017, Thomas Miller of GreyBird Investments pitched SFS/Healthineers to invest in a British biotechnology company called Base4. Miller told SFS/Healthineers that he was working to raise $30-50 million in venture capital for Base4. As part of that effort, Miller had submitted a term sheet to Base4 affording him financial incentives if he could secure a syndicate of investors. A former Siemens Healthcare executive, Miller by this time had a consulting contract with Siemens to deliver business proposals and investment opportunities. That contract was arranged by David Stein, SFS Head of Strategy, and Bernd Montag, CEO of Siemens Healthcare. Stein and his deputy, Mary Amor, "openly supported" investing in Base4 through GreyBird. Compl. ¶ 20.

Having previously considered and rejected this investment as premature after a site visit in the summer of 2016, plaintiff's team revisited the possibility in light of executive support for it. After another visit to Base4, however, plaintiff and his colleagues "remained unimpressed." Compl. ¶ 21. In June or July of 2017, plaintiff received a phone call from Cameron Frayling, the CEO of Base4. According to Frayling, Miller had told him that Siemens Healthcare would invest or not at Miller's instruction, and that Frayling "should sign the proposed term sheet with GreyBird if he wanted to see any funding from Siemens Healthcare." Compl. ¶ 22.

---

[1] Although defendants complain that plaintiff "overstates both [his] position and authority," they do not clarify their view of his role. Docket # 18-1, at 3, n.1.

Plaintiff discussed this call with several colleagues and determined, "based on their advice, standing SFS policy and his own conscience" to report the matter to the company's compliance department. He spoke with Barbara Greenberg on the Siemens Compliance hotline, informing her "of the Base4 situation" and expressing concern "about personal and professional implications from his report." Compl. ¶ 24.

Greenberg subsequently reported no compliance problem because a Healthineers attorney had informed her that Miller had no contractual relationship with Healthineers. When plaintiff informed her that Miller was in fact under contract as a consultant, a "surprised" Greenberg asked that he provide a copy of the contract.[2] Compl. ¶ 25. Plaintiff received no further communication from the compliance department, but learned that Miller's contract "would not be renewed despite Healthineers' satisfaction with the value it was receiving." Compl. ¶ 27. Despite plaintiff's "best efforts to remove it from consideration," the Base4 investment remained in play for weeks after his report, with Stein's continued advocacy.

Thereafter, Stein and Montag, "in their capacities as SFS Head of Strategy and CEO of Siemens Healthcare, acted in concert to concoct a pretextual reason to demote Plaintiff, remove many of his job duties, and replace him with an outside hire, all in retaliation for Plaintiff's Compliance report." Compl. ¶ 30. Pursuant to that scheme, plaintiff was demoted in September 2017 from Vice President reporting directly to the SFS CEO, to Director reporting to Stein's deputy Amor, a Hiring Manager. Amor informed him in a meeting on October 2, 2017, that Stein and Montag had decided several weeks prior that a substantial portion of plaintiff's job responsibilities would be

---

[2] It is not clear from the complaint whether plaintiff in fact provided Greenberg with the contract.

3

transferred to a new hire acting as his direct superior.  At a second meeting three days later, Amor and a human resources employee repeated this information.  They emphasized that Stein and Montag had made the decision back in August, adding this time that "the reason for the demotion was his presentation style in Investment Committee Meetings."  Compl. ¶ 37.  Plaintiff had never previously been informed of a problem with his presentation style, and in the three Investment Committee Meetings he attended with Montag, the two topics he presented advanced successfully.

Accordingly, plaintiff informed Human Resources on October 13, 2017 that he believed his demotion to be "in retaliation for his Compliance report regarding Miller's extortion of Base4's CEO."  Compl. ¶ 41.  On October 25, 2017, Stein confirmed his and Montag's intention to demote plaintiff, again citing his presentation style.  By letter dated October 31, 2017, Siemens informed plaintiff it had found no connection between his compliance report and demotion, and gave him until November 6, 2017 to accept the demotion or resign.  By refusing to accept the demotion, plaintiff was constructively discharged on November 6, 2017.

On December 27, 2017, he brought this one-count complaint alleging wrongful discharge in Suffolk Superior Court.  Defendants thereafter removed to this court based on diversity jurisdiction and now move to dismiss.

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52–53 (1st Cir. 2013).

## III.   Analysis

Defendant contends that the most plaintiff alleges is discharge for an internal complaint about company policy for which liability may not lie. Plaintiff argues that he reported not a mere deviation from company rules but what he reasonably perceived to be criminal extortion, discharge for which violates a well-established public policy protecting whistleblowers.

Massachusetts courts recognize a narrow exception to the general at-will employment rule "when employment is terminated contrary to a well-defined public policy." Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1244 (Mass. 1992); see King v. Driscoll, 638 N.E.2d 488, 492 (Mass. 1994) (exception narrowly construed). Under the exception, redress is most clearly available to employees terminated "for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 533 N.E.2d 1368, 1371 (Mass. 1989). It may also extend in some cases to employees "terminated for performing important public deeds, even though the law does not absolutely require the performance of such a deed." Flesner v. Tech. Commc'ns Corp., 575 N.E.2d 1107, 1111 (Mass. 1991). This category includes

5

"whistleblowing," or an internal complaint concerning an alleged violation of criminal law. Hinchey v. NYNEX Corp., 144 F.3d 134, 145 (1st Cir. 1998) (citing Shea v. Emmanuel Coll., 682 N.E.2d 1348, 1350 (Mass. 1997)). "It is well established," however, "that Massachusetts law does not protect at-will employees who claim to be fired for their complaints about internal company policies or the violation of company rules, even though the employees' actions may be considered appropriate and 'socially desirable.'" Falcon v. Leger, 816 N.E.2d 1010, 1017-18 (Mass. App. Ct. 2004) (quoting Smith-Pfeffer, 533 N.E.2d at 1371). Whether a retaliatory firing violates public policy is a question of law for the judge to decide. Wright, 589 N.E.2d at 1243.

Because internal matters cannot be the basis of a public policy exception to the at-will rule, liability lies here only if plaintiff's internal complaint reported an alleged violation of criminal law. No law need actually be violated so long as the employee's belief of a violation is reasonable and the report is made in good faith. See Falcon, 816 N.E.2d at 1019, and cases cited; see also Mass. Gen. Laws ch. 149, § 185 (b) ("An employer shall not take any retaliatory action against an employee [who] . . . discloses . . . an activity . . of the employer, or of another employer with whom the employee's employer has a business relationship, that the employee reasonably believes is in violation of a law") (emphasis added).

Here, plaintiff alleges that defendants constructively discharged him "in retaliation for reporting an incident of extortion to Siemens' Compliance Department." Compl. ¶ 1. He also alleges having informed Human Resources prior to his discharge that he believed his demotion was "in retaliation for his Compliance report regarding Miller's extortion of Base4's CEO." Compl. ¶ 41.

6

Plaintiff has sufficiently alleged that he made the report in good faith. He consulted with colleagues and decided to call the compliance hotline "based on their advice, SFS policy, and his own conscience." Compl. ¶ 23. He stood to gain nothing by making the report, and indeed told Goldberg he was concerned about the personal and professional consequences of doing so. Compl. ¶ 24.

He has also pleaded sufficient facts in support of his reasonable belief that Miller's conduct was criminally extortionate. Extortion under Massachusetts law may be committed by anyone who obtains a pecuniary advantage through some threat to a person or his property, including to intangible business interests. Mass. Gen. Laws ch. 265, § 25; Commonwealth v. Matchett, 436 N.E.2d 400, 408 (Mass. 1982); see also Commonwealth v. Downey, 429 N.E.2d 41, 43-44 (Mass. App. Ct. 1981). The threat in question need not portend violence or put the victim in fear. See Manchester v. City of Amesbury, 138 F. Supp. 3d 54, 68 (D. Mass. 2015). At this stage, Miller's threat to withhold Siemens funding from Base4 unless Base4's CEO signed GreyBird's term sheet providing him with financial benefits satisfies this standard. Cf. Nardone v. Raytheon Co., No. CIV.A. 2013-04996, 2014 WL 2159048, at *3 (Mass. Super. May 19, 2014) (allowing employee's claim to proceed even though he was fired for reporting violations of a statute containing only civil sanctions).

Accordingly, defendants' motion is in substance denied. They move additionally for the dismissal with prejudice of improperly named entities Next47GmbH and Siemens AG. Given the complicated corporate relationships at issue and the nascent stage of this litigation, however, the motion is denied without prejudice to its renewal after discovery.

## IV. Conclusion

Defendants' motion to dismiss Count 1 (Docket # 6) is denied. Defendants' motion for leave to file (Docket # 18) is allowed.

    August 30, 2018                                  /s/Rya W. Zobel
            DATE                                            RYA W. ZOBEL
                                                              SENIOR UNITED STATES DISTRICT JUDGE